## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Joel C. Wieneke
Wieneke Law Office, LLC
Plainfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re: The Paternity of R.R., | January 27, 2015 |
| | Court of Appeals Cause No. 54A05-1407-JP-325 |
| J.R. (Father) *Appellant* | Appeal from the Montgomery County Circuit Court The Honorable Harry Siamas, Judge Cause No. 54C01-1308-JP-191 |
| v. | |
| T.G. (Mother), *Appellee* | |

**Friedlander, Judge.**

[1] J.R. (Father) appeals from the trial court's order modifying parenting time following a contempt hearing. On appeal, Father argues that the trial court committed reversible error by modifying parenting time without a petition

requesting such modification and without a finding that modification of parenting time was in the child's best interests.

[2] We reverse and remand.

[3] Father and T.G. (Mother) are the biological parents of R.R., who was born on December 8, 2012. On October 11, 2013, the trial court, under Cause No. 54C01-1308-JP-191, approved an Agreed Entry on Petition for Support and Unreimbursed Past Public Assistance with Paternity Affidavit (Agreed Entry) that designated Father as the sole legal custodian of R.R. and directed that Mother have parenting time pursuant to an agreement by the parties.[1] At the time the Agreed Entry was filed, R.R. had been placed with Father through a CHINS action instituted by the Department of Child Services (DCS) under a separate cause. R.R. continued to be a DCS ward.

[4] Subsequent to the Agreed Entry, Mother and Father entered into an Agreement as to Custody and Visitation, which was approved by the trial court in the paternity action on November 25, 2013. Specifically, Father and Mother incorporated the terms established in the CHINS action and agreed as follows with regard to parenting time:

> It is in the best interests of the child that Mother's parenting time shall be supervised until she has completed all of the requirements set forth in the most recent Child in Need of Services action under cause number 54C01 1212 JC 00321. Specifically, Mother must successfully complete a substance abuse program, following all recommendations

---

[1] The Agreed Entry further provided that if the parties were unable to reach an agreement, the Indiana Parenting Time Guidelines were to be followed.

made by the program and remain drug free. Mother must also participate in medication management and show proof from a physician that she is compliant in the use of her prescription medication.

*Appellant's Appendix* at 12.

[5] On March 31, 2014, Mother filed a Verified Motion for Contempt Regarding Parenting Time (Visitation) Order in which she alleged that she had made several attempts to communicate with Father to make arrangements for parenting time, but that Father had not responded to her requests. Mother did not include in her motion for contempt any request for modification of parenting time or allege that she had satisfied the terms of the November 25, 2013 order such that unsupervised parenting time was warranted.

[6] The trial court held a hearing on Mother's contempt motion on May 14, 2014. During that hearing, Mother testified that she had only seen R.R. once since November 25, 2013 order was issued and that she had made several attempts to communicate with Father via text messages, Facebook messages, and telephone to arrange visitation, but that Father had not responded. Father testified that on December 24, 2013, he and Mother had a disagreement because Mother was under the impression that DCS was no longer involved and that her visitations with R.R. no longer had to be supervised. Mother ultimately submitted to Father's requirement that her visitation with R.R. be supervised and she had a successful visit with R.R. A few months later Mother sent Father a message through Facebook and told Father that he would not supervise her visit with R.R. and that she would see R.R. Father responded by insisting that Mother's

visits be supervised and agreeing to let Mother see R.R. at any time under that condition. Mother "started getting angry with [Father] and using profanity." *Transcript* at 8. Father testified that in accordance with the advice of a Court Appointed Special Advocate appointed to look out for R.R.'s best interests, he ceased communicating with Mother until such time as the parties could appear in court.

[7] After Mother rested at the hearing, the court inquired as to whether Mother had complied with the requirements set forth in the November 25 order accepting the parties' agreement regarding visitation. Mother testified that she had completed a drug treatment program at Wabash Valley and that she was currently participating in a relapse prevention program and individual counseling. Mother further informed the court that she was taking a medication as prescribed for her drug addiction. In her closing statement to the court, Mother admitted that she "did a few times get a little nasty when [she] shouldn't have," but expressed her desire to have visitation with R.R. *Id*. at 12. Mother made no request for unsupervised visitation. In his closing statement to the court, Father admitted that he was not aware that Mother had participated in a drug treatment program. Father also expressed his desire that Mother be involved with R.R. and have regular visits, but asked the court to clarify for Mother's sake that her visits with R.R. needed to be supervised per their agreement.

[8] Thereafter, the trial court set forth its ruling and reasons therefor. Specifically, the court noted:

it's critical for any child, but particularly a child this young to have regular parenting time with each parent and unfortunately that has not happened. It was never the intention of the court, either in the CHINS case or in this paternity case, that [Mother] be excluded. The court's only concern in the CHINS case was that [Mother] have drug, alcohol treatment and complete a program and that she remain drug free and that was the only reason for the [sic] that it should be supervised.

*Id.* at 14. The court then found that, according to Mother's testimony, she had completed the requirements for terminating supervised visitation with R.R. by completing drug abuse treatment and participating in medication management. The trial court therefore found that there was no reason for the supervision of Mother's visits to continue, specifically noting that the supervision requirement was "meant to be short term" and not a "roadblock" for a parent to have visitation with their child. *Id.* at 15. The trial court therefore ordered that Mother have parenting time pursuant to the guidelines, explaining that "it's essentially every other weekend, it's one day during the week and then whatever else the guidelines state."[2] *Id.*

[9] Father filed a Motion to Correct Errors on June 9, 2014, in which Father asserted that he was not provided notice that modification of parenting time would be a matter before the court at the hearing on Mother's motion for contempt. Father also asserted that the court's order that Mother's parenting

---

[2] The trial court's written order likewise stated that Mother "should have parenting time with the child as set out in the Indiana Parenting Time Guidelines; with the first weekend parenting time to begin Friday May 16, 2014 to Sunday, May 18, 2014."[2] *Appellant's Appendix* at 20.

time include full weekends was not appropriate given R.R.'s age. The trial court denied Father's motion on June 13, 2014. Father now appeals.

[10] We first note that Mother did not file an appellee's brief. When an appellee fails to submit a brief, we apply a less stringent standard of review with respect to the showing necessary to establish reversible error. *In re Paternity of S.C.*, 966 N.E.2d 143 (Ind. Ct. App. 2012), *trans. denied*. In such cases, we may reverse if the appellant establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it. *Id*. But even under the prima facie error standard, we are nevertheless obligated to correctly apply the law to the facts in the record to determine whether reversal is warranted. *Tisdale v. Bolick,* 978 N.E.2d 30 (Ind. Ct. App. 2012).

[11] We begin by noting that the parties appeared before the court on Mother's motion for contempt, which motion she filed in the paternity action. The record indicates that there was a separate CHINS action involving the same parties. In both actions, the issue of visitation had been previously addressed. An agreement between the parties as to visitation in the paternity action incorporated the requirement of supervised visitation that was set out in the CHINS action. Further, the parties agreed that supervised visitation was to continue until Mother could show (1) that she had successfully completed a substance abuse program, (2) that she was following all recommendations of such program and remaining drug free, and (3) that she provide proof from a physician that she was compliant in her use of prescription medications.

[12] The trial court in the paternity action, relying solely upon Mother's testimony, found that Mother had met the requirements laid out in the visitation order in the CHINS action and agreement of the parties in the paternity action and therefore ordered that Mother have unsupervised visits with R.R., despite the lack of such a request from Mother.[3] In Father's motion to correct error, Father noted that the CHINS case was terminated after Mother entered into an agreement stating that she would have only supervised parenting time.[4] It seems apparent from the record before us that there are two conflicting court orders concerning Mother's visitation with R.R. and whether such visitation is to be supervised or unsupervised. Opposing orders of this nature will only create further conflict between the parties.

[13] Further, with regard to notice, we note that Father, unrepresented by counsel, appeared at the contempt hearing prepared to explain to the court why Mother had not had visitation with R.R. and why he should not be held in contempt. It is apparent from Father's statement to the court that the "roadblock" to visitation was Mother's mistaken belief that her visits with R.R. did not have to be supervised,[5] not the requirement of supervision itself. Until the court's ruling on Mother's motion for contempt, there was no notice given to Father that the

---

[3] As noted above, Mother never requested unsupervised visits in her motion for contempt or during the hearing on her motion for contempt. Mother testified that she just wanted to see her child. Further, Father testified that wanted Mother to be a part of R.R.'s life and that she could visit with R.R. at any time. Father simply asked the court to clarify for Mother's sake that the visits had to be supervised.

[4] The records from the CHINS case are not directly before us. As is noted, this information was gleaned from Father's motion to correct error filed in response to the trial court's ruling on Mother's contempt petition in the paternity action.

[5] As noted herein, Mother agreed that her visits with R.R. should be supervised.

court would take it upon itself to modify the parties' agreement regarding the necessity of supervised visitation.[6]

[14] With regard to the trial court's remarks regarding weekend parenting time, such statement is inconsistent with the Guidelines' recommendations for a child of R.R.'s age. If the issue before us is any indication as to how the parties will respond to the trial court's order, the inconsistencies between the trial court's comments regarding weekend parenting time and the recommendations of the Guidelines will likely prove to be a source of contention between Mother and Father.

[15] Based upon the record before us, we conclude that Father has established prima facie error in the trial court's order on Mother's motion for contempt. First, there are conflicting orders with regard to the supervision requirement of Mother's visits with R.R. Second, Father had no notice that a parenting-time modification would be considered at the contempt hearing. And, finally, the court's order as to full weekend visitation is inconsistent with the recommendation of the Parenting Time Guidelines. We therefore reverse the trial court's order.

---

[6] The Dissent seems to believe that it was incumbent upon Father to "express surprise" or "object" to the trial court's comments and verbal ruling regarding unsupervised visitation. *Slip op.* at 2. First, we note that Father agreed with the trial court's comments insofar as the court emphasized the importance of visitation between a child and his parent. Second, Father set forth his position to the court that he wanted the court to clarify for Mother that her visitation with R.R. was to be supervised per their agreement. The court's oral ruling contrary to Father's position, which was followed up with a written order, was appropriately challenged through Father's motion to correct errors and this appeal.

Judgment reversed and remanded.

Kirsch, J., concurs and Crone, J., dissents.

In Re: The Paternity of R.R.,

J.R. (Father)
*Appellant*

v.

T.G. (Mother),
*Appellee*

January 27, 2015

Court of Appeals Cause No.
54A05-1407-JP-325

Appeal from the Montgomery County
Circuit Court
The Honorable Harry Siamas, Judge
Cause No. 54D01-1308-JP-191

**Crone, Judge dissenting.**

Even under a prima facie error standard of review, I see no reason to reverse the trial court's order. Therefore, I respectfully dissent.

This less stringent standard is the result of Mother's failure to file an appellee's brief. Since both parties appeared pro se for the hearing at issue, it may well be that her failure to file an appellee's brief is due to a lack of funds and not a lack of interest. In reversing the order of the trial court – which presided over both the CHINS and the paternity proceedings – and remanding so that the court can "coordinate its determination as to Mother's parenting time with the order in the CHINS action," slip op. at 8, I feel that the majority is elevating form over substance and forcing parties of limited means to expend additional time and money so that the court can

make the same decision in a slightly reworded order. This is not an efficient use of the parties' or the trial court's resources.

[20] The CHINS case was terminated, so there is nothing left to coordinate.[7] At the conclusion of the contempt hearing, the trial court explained why it imposed supervised parenting time in the CHINS proceeding and also explained why it believed that supervision was no longer necessary in the paternity proceeding:

> The court's only concern in the CHINS case was that [Mother] have drug, alcohol treatment and complete a program and that she remain drug free and that was the only reason […] that it should be supervised. The order that the parties agreed to in the [paternity] case stated that parenting time should be supervised until she's completed the requirements set forth in the most recent child in need of services action and basically that she complete a substance abuse program and she says that she has. Completion of the IOP qualifies for that. Their recommendations were that she be in relapse prevention and she's doing that and she said she's drug free and following her medication management. So I don't see any reason for the supervision to continue. Supervision is always meant to be short term. It's never meant to be long term and the court finds it often is a roadblock to a parent getting their visits.

[21] Tr. at 14-15.

[22] Father knew that Mother's contempt motion was about his alleged denial of visitation, and expansion of visitation is often a remedy when visitation has been withheld. Father did not express surprise at or object to the trial court's comments

---

[7] The majority suggests that the CHINS case was terminated after the contempt hearing, but Father's motion to correct error indicates otherwise. *See* Appellant's App. at 21-22 ("That further error was the court granting full parenting time …. Particularly, given the fact that Mother *had just completed* participation in a CHINS case where she was the perpetrator of neglect of the parties' child …, which was terminated by Mother entering into an agreed entry whereby she would have only supervised parenting time.") (emphasis added). In any event, either party may seek to reopen the CHINS proceeding and request a clarifying order, if he or she desires.

and verbal ruling regarding unsupervised visitation, nor did he file an objection before the written order was issued. Trial courts dealing with pro se litigants in domestic situations are often thrust into awkward situations requiring creative and less formal approaches than possible with represented parties. Here, this trial judge had worked extensively and sincerely with these parties, and I am inclined to defer to his judgment in this circumstance. In sum, Father was given notice of and an opportunity to be heard on the issue of unsupervised visitation, and he failed to avail himself of that opportunity. "It is well settled that a party may not sit idly by, permit the court to act in a claimed erroneous manner, and subsequently attempt to take advantage of the alleged error." *Linenburg v. Linenburg*, 948 N.E.2d 1193, 1197 (Ind. Ct. App. 2011) (citation, quotation marks, and brackets omitted).

[23] Father complains about a lack of finding that an expansion of visitation would be in the child's best interests, yet he ignores the trial court's comments that "it's critical for any child, but particularly a child this young to have regular parenting time with each parent and unfortunately that has not happened." Tr. at 14. While some may quibble about whether these comments are technically a "finding" of the best interests of the child in this case, it seems clear to me what the trial court was intending and did in fact do.

[24] As for Mother not showing proof from a physician that she was compliant in her use of prescription medication, I would point out that the trial court, who imposed that requirement, obviously found her testimony credible and was satisfied that its

concerns regarding her substance abuse issues had been met. Thus, the court was well within its discretion to waive that requirement.[8]

[25] And finally, although the trial court's verbal remarks regarding weekend parenting time and the portion of its written order regarding "the first weekend parenting time" may not appear to be consistent with the Guidelines' recommendations for a child R.R.'s age, the important thing is that the order specifically states that Mother "should have parenting time with [R.R.] as set out in" the Guidelines. Appellant's App. at 20. Thus, the specific language of the Guidelines controls. The trial court gave each party a copy of the Guidelines, and therefore the parties are equally equipped to ensure that the Guidelines are followed. That being the case, I would affirm the trial court in all respects.

---

[8] Or the court could have amended its prior order sua sponte. *See* Ind. Trial Rule 54(B) (stating that nonfinal judgments are "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties"). But "[t]he law does not require the doing of a useless thing[.]" *Stropes by Taylor v. Heritage House Childrens Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 247 (Ind. Ct. App. 1989).